UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Criminal Action No. 6: 08-23-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| ROCKY MILLER, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendant Rocky Miller has entered a guilty plea to charges of drug distribution and being an unlawful drug user in possession of a firearm. He is currently awaiting sentencing. The matter is pending for consideration of Defendant Miller's motion for release for "exceptional reasons" under 18 U.S.C. § 3145(c). Although the Court concludes that it has jurisdiction to consider the Defendant's request under this statutory provision, exceptional reasons have not been presented which would justify release. The Court, therefore, will deny the motion for release.

## I.      BACKGROUND

Miller was indicted on March 27, 2008, and charged with conspiracy to distribute marijuana in violation of 21 U.S.C. § 846. He was also charged with possession with intent to distribute marijuana, and with being an unlawful drug user in possession of firearms, in violation of 21 U.S.C. § 841 and 18 U.S.C. § 922(g), respectively. On June 5, 2008, the Defendant pled guilty to conspiracy to distribute over 100 kilograms or more of marijuana and to being an unlawful drug user in possession of firearms. At the time of his plea, Miller admitted the following facts:

-1-

The Defendant during the dates alleged in the indictment conspired with Gerald Miller and Kenneth Day and others to knowingly and intentionally distribute 855-1055 pounds of marijuana. On April 28, 2005, the Defendant and Gerald Miller were present inside Day's pawn shop when the FBI executed a search warrant. Agents recovered $1,365.00 and $8,770.00 respectfully. On July 15, 2005, over 500 pounds of processed and packaged marijuana was found inside the home of a coconspirator of Day's, and wrappings were labeled "Rocky." Day later admitted that he had arranged to distribute a quantity of marijuana to the Defendant and Gerald Miller on the day of the search and that he was expecting payment of $10,000 for drugs purchased.

On May 15, 2006, agents followed an ATV trail around on real property utilized by the Defendant, as described in Count 6, and found a metal ammunition container in a wooded area that contained 2-4 pounds of marijuana. The can was left undisturbed for further investigation, and later an unmanned video surveillance system was installed overlooking the area. On July 5, 2006, agents returned to the spot to find 20-30 pounds of marijuana inside the container, and a review of video evidence showed Rocky Miller riding a yellow ATV to the site and handling the marijuana and storage can. In September 2006, agents discovered a second metal container containing another 20-30 pounds of marijuana, and video evidence of Rocky Miller retrieving it from the site and transporting it away on the ATV. Subsequent visits in December and January revealed a diminishing supply of marijuana and no further video evidence because of a malfunctioning camera.

Cooperating witnesses including Kenneth Day revealed that Day supplied both Rocky and Gerald Miller with 800-1000 total pounds of marijuana, who together picked up 20-40 pounds at a time from Day's Pawn Shop.

A search warrant was executed on the Defendant's home on January 10, 2007. Items recovered include $3,184 in currency, 5 firearms, and suspected marijuana. In addition, agents found evidence of drug use in the home and the Defendant made admissions to agents that all the guns and drugs in the house were his and that he was a drug user.

All marijuana seized was laboratory tested and confirmed to be marijuana, a schedule I controlled substance. ATF has confirmed that all weapons seized have affected interstate commerce.

[Record No. 42]  Under the Controlled Substances Act, 21 U.S.C. § 801 *et seq*., Miller faces a possible term of imprisonment of ten years or more.

At the conclusion of the rearraignment hearing, Miller was remanded to custody pursuant to the provisions of 18 U.S.C. § 3142(f)(1)(C) and § 3143(a)(2).  He has now filed a motion seeking to be released from custody for "exceptional reasons" under 18 U.S.C. § 3145(c).  In support of this motion, Miller asserts that, before he is sentenced, he needs to assist his wife and small child in locating and/or moving into a new residence.  The United States has opposed the motion. Specifically, the United States asserts that Miller has failed to cite any authority and that there are no legal grounds for him to be released pending sentencing.  Unfortunately, the United States' response is void of any authority in support of its position.[1]

## II.   DISCUSSION

### A.   Mandatory Detention Under 18 U.S.C. § 3143(a)

Several statutory provisions provide a starting point for analysis of the issue raised by Miller. First, 18 U.S.C. §3143(a) addresses the issue of whether to detain or release a defendant pending sentencing if he or she has been found guilty of one of several enumerated offenses.  In this case, Miller was detained after entry of his guilty plea to an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act, 21 U.S.C. § 801, *et seq.*  Under such circumstances the relevant statutory provision requires that he **shall** be detained pending the sentencing hearing unless –

> (A)(i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or
>
> (ii)  an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; *and*

---

[1]   Other than citation to 18 U.S.C. § 3145, Miller has also failed to provide any legal authority in support of his motion.

(B)   the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a) (emphasis added). Thus, under the clear language of the statute, the Court need not address the issues of risk of flight or dangerousness unless Miller is able to meet one of the two conditions contained in subsection (A)(i) or (A)(ii).

Here, Miller pled guilty to conspiracy to distribute over 100 kilograms or more of marijuana – an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act.  Due to the circumstances of his plea (which includes a waiver of the right to appeal his guilty plea and conviction), Miller cannot argue that there is a substantial likelihood that a motion for acquittal or for a new trial would be granted on appeal or that the Government will recommend that he not serve any time in prison.  Thus, he is unable to claim that the Court has authority to release him simply by showing that he does not pose a risk of flight or a danger to the community.  Therefore, he seeks release under the "exceptional reasons" language contained 18 U.S.C. § 3145(c).

## B.      Jurisdiction Under 18 U.S.C. § 3145(c)

Because there are no binding decisions in this circuit, the Court must decide as an initial matter whether 18 U.S.C. § 3145(c) provides the district court with jurisdiction to consider "exceptional reasons."[2]  The statute states that:

---

[2]      Recently, the United States has taken the position in other criminal matters pending before the undersigned that district courts do not have jurisdiction to consider exceptional reasons under 18 U.S.C. § 3145(c).  Similarly, in *Price*, the district court noted that the practice in that district had been to honor the parties' stipulations regarding a defendant's release on bond after entry of a guilty plea.  However, it noted that there had been a recent change in the United States Attorney's office to request detention pursuant to § 3143(a)(2) once a defendant had entered a guilty plea .  The court stated that this movement had resulted in number of requests by defense counsel to postpone their client's plea of guilt.  *See Price*, 2008 WL 215811, at *2, n.6.

**(c)**     **Appeal from release or detention order.**  An appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of [28 U.S.C. § 1291][3] and [18 U.S.C. § 3731].[4] The appeal shall be determined promptly.  A person subject to detention pursuant to section 3143(a)(2) or (b)(2), and who meets the conditions of release set forth in section 3143(a)(1) or (b)(1), may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are *exceptional reasons* why such person's detention would not be appropriate.

18 U.S.C. § 3145 (emphasis added).

While the title of § 3145(c) does not control its interpretation, the first sentence of the subsection would appear to limit to whom an appeal of an adverse decision may be appealed.  More specifically, the opening sentence would appear to limit appeals under this subsection to being filed by either party with the court of appeals as a result of a final decision of a district court under 28 U.S.C. 1291 or by the United States with the appropriate court of appeals under 18 U.S.C. § 3731.  With respect to appeals involving detention determinations by the district court, section 3731 provides, in relevant part, that:

**§ 3731.**     **Appeal by United States**

**              **  **    ** **     **  **     **

An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

---

[3]     Title 28 of the United States Code, Section 1291, provides that courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts.

[4]     Title 18 of the United States Code, Section 3731, provides that an appeal of a criminal case by the United States shall lie to a court of appeals.

The provisions of this section shall be liberally construed to effectuate its purposes.

18 U.S.C. § 3731.

### (1)    The Cases Addressing Jurisdiction Under 18 U.S.C. § 3145(c)

Although the above-referenced statutory provisions would appear to limit appeals for "exceptional reasons" to appellate courts, those courts that have addressed this issue are split concerning whether district courts have jurisdiction to review their own detention determinations under 18 U.S.C. § 3145(c).  In fact, the majority of circuit courts that have addressed the issue have concluded that district courts have jurisdiction to consider whether "exceptional reasons" exist to overcome the otherwise mandatory detention provisions of 18 U.S.C. § 3143(a)(2) and 18 U.S.C. § 3142(f)(1)(C).[5]

In *United States v. Carr*,  947 F.2d 1239, 1240 (5th Cir. 1991), the United States Court of Appeals for the Fifth Circuit reasoned that, because § 3145(c) refers to a person "subject to detention" under §§ 3143(a)(2) or (b)(2)[6], and because § 3143 uses the term "judicial officer" to refer to whom may direct release under this subsection, the individuals who initially order

---

[5]      *See United States v. Carr*, 947 F.2d 1239, 1240 (5th Cir. 1991) (per curiam); *United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991); *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992) (per curiam) (finding term "judicial officer" includes both district and appellate judges); *United States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992) (per curiam) (concluding without stating reasons that a district court may consider whether exceptional reasons exist to release a defendant under § 3145(c)); *United States v. Mostrom*, 11 F.3d 93, 95 (8th Cir. 1993) (accepting without analysis that a district court may utilize § 3145(c)); *United States v. Garcia*, 340 F.3d 1013, 1014 n. 1 (9th Cir. 2003) (agreeing that district courts may consider whether exceptional reasons exist to grant bail without undertaking an independent analysis of the statutory section).

[6]      Title 18 of the United States Code, Section 3143(b)(2), contains similar mandatory detention language for defendants who have been found guilty of similar offenses and have been sentenced.  This section applies to issues of detention pending appeal.

mandatory detentions, the subsection grants jurisdiction to district courts to make release determinations if "exceptional reasons" are demonstrated.

Similarly, in *United States v. Herrera-Soto*, 961 F.2d 645, 647 (7th Cir. 1992), the United States Court of Appeals for the Seventh Circuit held that the term "judicial officer" referenced in § 3145(c) encompasses both district courts *and* appellate courts. Notably, published decisions from the Second, Tenth and Eighth Circuits do not contain any independent statutory analysis. Instead, these courts appear to have simply assumed that jurisdiction under § 3145(c) is available to district courts. *See, e.g., United States v. DiSomma*, 951 F.2d 494, 496 (2d Cir. 1991) (following *Carr*); *United States v. Jones*, 979 F.2d 804, 806 (10th Cir. 1992) (following *Carr*, *Herrera-Soto*, *DiSomma*); *United States v. Mostrom*, 11 F.3d 93, 95 (8th Cir. 1993) (following *Carr* ).

And while the Sixth Circuit has addressed this issue, it has done so in a non-binding, unpublished decision. In *United States v. Cook*, 42 F. App'x 803, 804 (6th Cir. 2002), the court relied on the decisions in *Mostrom*, 11 F.3d at 9; *Jones*, 979 F.2d at 806; *Herrera-Soto*, 961 F.2d at 647; *DiSomma*, 951 F.2d at 496; *Carr*, 947 F.2d at 1240; *United States v. Burnett*, 76 F. Supp. 2d 846 (E.D. Tenn. 1999); and *United States v. Hill*, 47 F.3d 1171, 1995 WL 19367 (6th Cir. 1995), in holding that a district judge is not precluded from making a determination of "exceptional reasons" under § 3145(c). Specifically, the Sixth Circuit stated that,

> [a]lthough the mention of exceptional circumstances appears at the close of a section otherwise devoted to review and appeal, we are not convinced that it is meant to be an instruction limited to the courts of appeals. The language provides that the necessary findings may be made by a "judicial officer," a term that is used throughout the bail statutes to refer to magistrate judges, district court judges, and judges of the courts of appeals. Most courts considering the issue have concluded that a district court is empowered to make findings regarding exceptional circumstances.

*Cook*, 42 F. App'x at 804.

-7-

A number of district courts have criticized the lack of statutory analysis in the circuit court opinions and have respectfully parted company with those decisions.[7]  For example, the United States District Court for the Western District of Pennsylvania has analyzed the language and structure of § 3145(c) on two occasions.  In both instances, that court has concluded that this statutory provision provides jurisdiction only to appellate courts.  *See United States v. Nesser*, 937 F. Supp. 507 (W.D. Pa. 1996), and *United States v. Salome*, 870 F. Supp. 648 (W.D. Pa. 1994).  In support of this conclusion, the court relied primarily on the structure of § 3145.  In *Nesser*, the court stated that:

> With regard to the structure of section 3145, we observe first that section 3145 has three sections.  Section 3145(a) concerns review by "the court having original jurisdiction over the offense" of an order issued by "a magistrate, or by a person other than a judge of a court having original jurisdiction over the offense and other than a Federal appellate court" for release of a defendant.  Both the government and the defendant have the right to seek such review, the latter for review of the conditions of release.
>
> Section 3145(b) concerns review under the same terms as section 3145(a) of an order that a defendant be detained.
>
> This leads to section 3145(c).  The first sentence of section 3145(c) provides that "[a]n appeal from a release or detention order, or from a decision denying revocation or amendment of such an order, is governed by the provisions of section 1291 of title 28 and section 3731 of this title."  Thus, after providing for "review" by "the court having original jurisdiction over the offense" in sections 3145(a) and (b), section 3145(c) then progresses to a right to an "appeal" from a release or detention order.

*Nesser*, 937 F. Supp. at 508-09.

---

[7]     *See In re Sealed Case*, 242 F. Supp. 2d 489 (E.D. Mich. 2003) (holding district court lacks jurisdiction under § 3145(c) and urging Sixth Circuit to hold in published opinion that § 3145(c) grants authority only to court of appeals); *United States v. Harrison*, 430 F. Supp. 2d 1378 (M.D. Ga. 2006) (holding § 3145(c) applies only to appellate courts); *United States v. Chen*, 257 F. Supp. 2d 656 (S.D.N.Y. 2003) (same); *United States v. Nesser*, 937 F. Supp. 507 (W.D. Pa. 1996) (holding § 3145(c) applies to courts of appeals and declining to address exceptional circumstances argument); *United States v. Salome*, 870 F. Supp. 648 (W.D. Pa. 1994) (holding § 3145(c) applies to courts of appeals and finding no exceptional circumstances in any event).

More recently, district courts within the Sixth Circuit have discussed the issue. However, these courts are also split on whether § 3145(c) authorizes the district court to engage in an "exceptional reasons" analysis.[8] In a thoughtful opinion from the Eastern District of Michigan, the court examined the structure, language and placement of § 3145(c) and concluded that district courts do not have jurisdiction to release defendants under this statutory provision. *In re Sealed Case*, 242 F. Supp. 2d 489 (E.D. Mich. 2003). The court relied primarily on the plain language of the statute, noting that the first sentence of subsection (c) plainly states that "[a]n appeal from a release or detention order is governed by the provision of [28 U.S.C. § 1291]." The court noted that 28 U.S.C. § 1291 authorizes appeals only from final decisions of the district court. Like the Pennsylvania courts, the Michigan district court also noted that the overall structure of § 3145 supports the conclusion that district courts do not have jurisdiction. Specifically, the court noted that the title of subsections (a) and (b) of 1345 include the word "review," while the title of subsection (c) references "appeals." The Michigan court also rejected the argument that the "exceptional reasons" provision of § 3145(c) should be read in conjunction with those provisions of § 3143 that outline the general procedures by which a judicial officer determines whether a defendant should be detained or released pending sentence or appeal. Specifically, the court stated that "[i]f Congress had intended to invest district courts with the discretion to determine whether exceptional reasons existed, this court believes it would have said so in § 3143." *Id.*

Finally, the Michigan court dispensed with the argument that § 3145(c) is applicable to district courts because federal appellate courts are not in a position to make factual findings. It

---

[8]     *Compare United States v. Salazar*, 2007 WL 542390 (W.D. Ky. 2007); *Burnett*, 76 F. Supp. 2d 846; *United States v. Rodriguez*, 50 F. Supp. 2d 717 (N.D. Ohio 1999) (applying § 3145(c)) with *In re Sealed Case*, 242 F. Supp. 2d 489 (district courts lack jurisdiction under § 3145(c) to consider exceptional reasons for release).

reasoned that "the courts of appeals have the ability, indeed the responsibility, to make independent factual findings in proceedings arising under the Bail Reform Act." *Id*. at 1384 (citing *United States v. Provenzano*, 605 F.2d 85 (3d Cir. 1979)).  The court also distinguished the contrary circuit court opinions, stating that these courts have either ignored basic principles of statutory construction or abandoned independent analysis altogether.  And while the Michigan court acknowledged the Sixth Circuit's unpublished opinion in *Cook*, it urged the court to reconsider its decision and hold in a published opinion that § 3145(c) grants authority only to appellate courts.

In contrast, in *United States v. Burnett*, 76 F. Supp. 2d 846 (E.D. Tenn. 1999), the United States District Court for the Eastern District of Tennessee concluded that § 1345(c) affords district courts authority to release a defendant for "exceptional reasons."  Although the court referenced the district court decisions that have concluded that § 3145(c) only applies to appellate courts, it held that it could not "ignore the clear weight of [appellate] authority."  *Id*. at 849.

In *United States v. Mellies*, 496 F. Supp. 2d 930 (M.D. Tenn. 2007), the United States District Court for the Middle District of Tennessee chose not to decide the jurisdictional issue but instead found that "even if the Court were to apply § 3145(c)  .  .  .  the defendant [failed to] establish[] any exceptional reason why he should be released pending sentencing."  *Id*. at 934  Acknowledging the circuit's unpublished decision in *Cook*, the court opined that the Sixth Circuit "may eventually issue a published opinion following the other circuits."  *Id*.

More recently, in *United States v. Price*, No. 5:06CR41-11-V, 2008 WL 215811 (W.D.N.C. Jan. 24, 2008), the United States District Court for the Western District of North Carolina held that district courts have jurisdiction to apply the "exceptional reasons" provision within § 3145(c).  The court found that there were latent ambiguities within § 3145 and that the legislative history of the

-10-

statute supported its conclusion.  It noted that, when examining a statute, a court first looks to its explicit language to determine whether it has a plain and unambiguous meaning.  The inquiry ceases if the statutory language is unambiguous and the statutory scheme is coherent and consistent.  *Id.* at *4 (citing *Barnhart v. Sigmon Coal Co.*, 534 U.S. 438, 450 (2002)).

### (2)        The Statutory Language of 18 U.S.C. § 3145(c)

As noted above, many of the district courts addressing this issue have held that the plain language of § 3145 establishes that the "exceptional reasons" provision is only applicable on appeal. These courts generally note that § 3145 is entitled "appeal from a release or detention order" and that the first sentence of the statute states that "[a]n appeal from a release or detention order . . . is governed by the provisions of section 1291," which authorizes appeals only from final decisions of the district courts.  However, in *Price*, the North Carolina court determined that "latent ambiguities exist within 18 U.S.C. § 3145."  *Price*, 2008 WL 215811, at *4.  Specifically, it held that the term "judicial officer" as used in § 3145(c) is "reasonably susceptible to more than one meaning" inasmuch as it is used throughout the bail statutes to refer to judges at all levels of the federal judicial system, depending upon the posture of the case.  *Id.* at *5.  In light of the ambiguities in the statute, the court determined that it must look beyond the plain language of the statute "in order to glean Congress' intent."  *Id.* at *6.

The *Price* court determined that the legislative history of § 3145(c) supports the view that the district court has jurisdiction to consider "exceptional reasons."  It noted that the "exceptional reasons" provision of § 3145(c) was added to the statute at the same time Congress added the mandatory detention provisions of § 3143(a)(2) and (b)(2).  *Id.* at *6 (citing Historical and Statutory Notes, 1990 Amendments).  The court also found that this timing demonstrated that Congress

-11-

intended to create an exception to the newly codified mandatory detention provisions of §
3143(a)(2).  *Id.* at *6.

Having considered the various statutory interpretations, this Court agrees with the holding
in *Price* that § 3145(c) may be applied by the district court *and* the appellate court.[9]  The Court
acknowledges that, if read in isolation, the *introductory sentence* of § 3145(c), which refers to
statutes that address appeals from final orders of the district court, states that § 3145 may only be
applied by the appellate courts.  However, when this language is read *in conjunction with* the
remainder of § 3145, and in context of the Bail Reform Act as a whole, the statute's meaning is
indeed ambiguous.  And due to this ambiguity, the Court must consider the legislative history of the
statute.

### (3)   The Legislative History of 18 U.S.C. § 3145(c)

In *United States v. Green*, 250 F. Supp. 2d 1145 (E.D. Mo. 2003), the United States District
Court for the Eastern District of Missouri engaged in a lengthy and helpful discussion of the statute's
legislative history.  Specifically, the court noted that,

> Prior to passage of the current version of § 3143 and § 3145, the Bail Reform Act
> afforded substantial discretion in the district court regarding detention of defendants
> who were convicted but awaiting sentencing or appeal.  Believing that there was
> "little need for judicial discretion to release those who have been found guilty," in
> 1989, Senator Paul Simon introduced the Mandatory Detention for Offenders
> Convicted of Serious Crimes Act.  The bill was intended to prevent defendants
> convicted of a violent or serious drug trafficking crime "from reentering the

---

[9]      In addition to a structural analysis of the Bail Reform Act, common sense also dictates the result
reached here.  Simply put, the concept of appellate review contemplates that courts of appeals will review
a decision made in the first instance by the district court.  If the district court fails to engage in an analysis
of whether "exceptional reasons" exist justifying release, the appellate court will be unable to make an
informed decision on the issue if the matter is subsequently presented for review.  As the district court noted
in *Price*, "even after notice of appeal is given, the district court should make the initial determination as to
a defendant's eligibility for bond [because] . . . it is better situated than an appellate court to find the facts
necessary to making a bail determination."  *Price*, 2008 WL 215811, at *8.

community where they pose a danger and can commit further offenses. . . ."  Senator Simon believed that "[t]here is simply no reason that an individual convicted of a violent crime or serious drug trafficking offense should be back on the street.  This legislation would ensure that dangerous individuals are kept where they belong, in prison."  Congressman Glickman addressed the House of Representatives regarding the Mandatory Detention for Defendants Convicted of Serious Crimes Act on March 6, 1990.  Mr. Glickman stated:

> There is almost never a good reason for letting someone already convicted of a violent crime or serious drug trafficking offense back on the street . . .  There is no presumption of innocence once a defendant has been convicted, so the law should not allow a convicted criminal to enjoy the privileges of an innocent man. . . . It is difficult enough to convict drug dealers and violent criminals, without allowing them back on the street to commit more crimes before sentencing.

The intent of the bill was clearly to limit judicial discretion in the case of convicted drug traffickers or violent criminals.  However, the Justice Department suggested limited exceptions under which discretion should remain.  One such exception was an "exceptional reasons" provision.  In a letter to Senator Simon dated July 26, 1989, Assistant Attorney General Carol T. Crawford offered two examples of exceptional circumstances.  The first example hypothesized an elderly man who was convicted of the mercy killing of his wife and who challenged the applicability of the federal murder statute on appeal.  The second example hypothesized a seriously wounded drug dealer whose appeal raised a novel search and seizure issue.  In both examples, the probability of repeat criminal behavior was slim and the validity of the conviction remained in question.  As noted by the Second Circuit, "[t]he examples given in the Crawford Letter present a unique combination of circumstances giving rise to situations that are out of the ordinary."

Ultimately, Senator Simon's bill, with the exceptional reasons provision, was added as an amendment to the 1990 Crime Bill, and was enacted November 29, 1990.  The mandatory detention provision was codified at 18 U.S.C. § 3143.  Section 3143(a)(2) requires immediate detention upon conviction of a serious drug trafficking offense or a violent crime.  The "exceptional reasons" exception to mandatory detention pending sentencing or appeal was codified at 18 U.S.C. § 3145(c).

*Green*, 250 F. Supp. 2d at 1148 (internal citations omitted).  The legislative history of § 3145(c) was

also discussed in *Price*.  There, the court noted that:

> The language at issue was added to the statute at the same time the mandatory detention provisions of Sections 3143(a)(2) and (b)(2) were added.  This explains in

part why Sections 3143(a)(2) and (b)(2) and 3145(c) both employ the broader "judicial officer" as opposed to the more specific terms used within § 3145(a) and (b). The timing of the amendments to the statutes (*i.e.*, contemporaneous) tends to show that by adding the "exceptional reasons" language to § 3145(c), Congress intended to create an exception to the newly codified mandatory detention provision within § 3143(a)(2).

*Price*, 2008 WL 215811, at * 6.

Moreover, there is persuasive authority indicating that even after notice of appeal is filed, the district court has the authority to make the initial determination as to a defendant's eligibility for bond pending appeal. Notably, the district and the appellate courts have concurrent jurisdiction over a motion under § 3143(b) and "[t]he Supreme Court has implicitly recognized that a district court is better situated than an appellate court to find the facts necessary to making a bail determination." *See United States v. Snyder*, 946 F.2d 1125, 1126-27 (5th Cir. 1991) (citing *Mathis v. United States*, 389 U.S. 801 (1967)); *Jago v. United States*, 570 F.2d 618, 623 (6th Cir. 1978) ("Release pending an appeal must be first sought in the district court even after an appeal has been noted from the judgment of conviction."); *Provenzano*, 605 F.2d at 91 ("The initial resolution of a convicted defendant's motion for release pending appeal has traditionally been entrusted to the trial judge.").

Finally, although the Sixth Circuit has not addressed this issue in a published opinion, *Cook*, *supra*, squarely discusses the jurisdictional issue and concludes that a district judge has jurisdiction under § 3145(c) to consider "exceptional reasons." This decision is in line with the other circuits that have discussed the issue. Having reviewed the Sixth Circuit's unpublished decision, the published opinions from other circuits, the numerous district court opinions on the issue, and the statute's legislative history, the Court concludes that § 3145(c) provides the district court with a limited grant of jurisdiction to consider "exceptional reasons" for release of a defendant detained pursuant §§ 3143(a)(2) or (b)(2). While the district court opinions finding a lack of jurisdiction are

well-reasoned, the Court disagrees with their ultimate determination that the plain language of §
3145(c) compels the conclusion that the statute is applicable only on appeal.  Specifically, the Court
finds that the language of § 3143 is ambiguous and "demonstrates the absence of a clear and
coherent procedure as well as an inconsistent use of key terms and phrases."  *Price*, 2008 WL
215811, at *7.  And after reviewing the legislative history of the statute, this Court concludes that
Congress did not intend to preclude district courts from making determinations of "exceptional
reasons" under § 3145(c).

### C.      What Constitutes "Exceptional Reasons"?

While the Court has concluded that it has jurisdiction under § 3145(c), Miller has not
established "exceptional reasons" which would support his release pending sentencing.  Although
the statute does not define "exceptional reasons," the courts that have addressed this issue have held
that the determination of whether "exceptional reasons" exists is a fact-intensive inquiry that must
be made on a case-by-case basis.  *Herrera-Soto*, 961 F.2d at 647; *DiSomma*, 951 F.2d at 497.
Further, it is clear that this limited grant of jurisdiction should not be interpreted in a manner to
circumvent the clear congressional intent expressed in § 3143.

### (1)      Relevant Cases

Courts generally agree that the term "exceptional reasons" is limited to those situations
which are "out of the ordinary," "uncommon," or "rare."  *See DiSomma*, 951 F.2d at 497 (defining
"exceptional reasons" as a "unique combination of circumstances giving rise to situations that are
out of the ordinary"); *United States v. Koon*, 6 F.3d 561, 565 (9th Cir. 1993); *United States v.
Kaquatosh*, 252 F. Supp. 2d 775, 777 (E.D. Wis. 2003) (noting that term has been defined as unique,
uncommon, rare, or out of the ordinary).  Additionally, the cases establish that mere personal

reasons, including caring for a family or gainful employment are not "exceptional." Specifically, in *Cook*, the Eastern District of Tennessee concluded that cooperation with the government and hardship to family and business associates did not amount to "exceptional reasons." On appeal, although the Sixth Circuit did not identify the factors that should be considered in determining "exceptional reasons," it affirmed the district court's holding that the circumstances presented by *Cook* did not warrant release. *See Cook*, 42 F. App'x. at 804; *see also Mostrom*, 11 F.3d at 95 (stating that transportation issues, employment, and compliance with pretrial supervision are not exceptional); *United States v. Lippold*, 175 F. Supp.2d 537, 540 (S.D.N.Y. 2001) (stating that "purely personal" reasons, such as caring for young children with "unusual" health problems, "do not typically rise to the level of 'exceptional reasons'"); *United States v. Mahabir*, 858 F. Supp. 504 (D. Md. 1994).

In support of this conclusion, many courts have noted that, in most instances, incarceration imposes a great burden upon a defendant's family and finances. *See United States v. Clark*, No. 2:02CR10104, 2003 WL 60478 (W.D. Va. Jan. 7, 2003) (stating that "family and job responsibilities are unfortunately common, rather than unique, circumstances of convicted drug traffickers"); *Lippold*, 175 F. Supp. 2d at 540 (quoting *Burnett*, 76 F. Supp. 2d at 849. In *Burnett*, the court noted that:

> if it [was] determined [that] such personal hardships qualified to prevent or delay detention, then inevitably defendants committing the same offenses would be treated disparately for reasons unrelated to their crimes or personal character. A drug trafficker with no family would immediately go to jail while a drug trafficker convicted of the same offense with a family would remain on bail. Such disparity . . . would be contrary to the goals of the federal criminal legal system and would not be a desirable objective of a just system of law.

*Burnett*, 76 F. Supp. 2d at 850. Thus, courts addressing this issue have consistently concluded that personal reasons are not "exceptional reasons" and will not warrant release under § 3145(c).

**(2)     Legislative History**

Congressional history also is helpful – but not necessarily determinative – in ascertaining what constitutes "exceptional reasons." In *Green*, the district court for the Eastern District of Michigan noted that:

> The initial bill introduced by Senator Simon did not contain an exception to mandatory detentions, and Senator Simon clearly believed that "no reason" justified allowing a person convicted of a serious drug trafficking offense the opportunity to further harm the community while awaiting execution of the impending sentence. Assistant Attorney General Crawford's letter demonstrates that the exception was intended for only those rare instances where there is little to no chance that the defendant can engage in recidivist conduct and legal questions involving the validity of the conviction remain unresolved, thereby making immediate detention of the defendant pending sentencing or appeal an unduly harsh consequence.

*Green*, 250 F. Supp. 2d at 1149-50.

In discussing this legislative history, the Ninth Circuit noted that:

> Congress added the "exceptional reasons" provision in 18 U.S.C. § 3145(c) to mitigate the harshness of section 3143(b)(2)'s blanket prohibition on release pending appeal in drug cases and cases involving crimes of violence . . . This letter [from the Department of Justice] suggested that, in some cases, release might be proper even for people convicted of crimes of violence and serious drug offenses . . . Assistant Attorney General Crawford's letter to Senator Simon appears to be the only legislative history of the "exceptional reasons" provision. It indicates that exceptional reasons will exist when an appeal raises substantial questions of law and, because of special circumstances not present in ordinary drug and violent crime cases, it can be said with certitude that the defendant will present neither a risk of flight nor of danger to the community if released. The letter included two examples of cases presenting "exceptional reasons," which indicate that a variety of unusual cases can satisfy this standard . . . .

> What these cases have in common is that, in both, objective factors make it sufficiently certain that the defendant will not present a danger to the community if released, notwithstanding the presumption that all persons convicted of violent crimes and serious drug crimes are dangerous. We used to presume that defendants

-17-

were entitled to bail pending appeal.  The only reason Congress reversed this presumption in 1984 was its concern for the danger many defendants present upon release.  Congress tightened the requirements in 1990 out of a concern that a clear and convincing showing was not enough to protect society from violent criminals and serious drug offenders.  Yet Congress left an exception to its general rule requiring detention in these cases.  Whatever its outer bounds, this exception must certainly apply in a case in which there is no danger that the defendants will commit criminal acts while on appeal or will flee. In short, the exception must apply where detention would not serve any rational goal of the mandatory detention law.

The two hypothetical cases in Assistant Attorney General Crawford's letter indicate that other factors, besides total lack of dangerousness, may establish "exceptional reasons."  Both of the cases in the letter involve a person for whom detention would be "unduly harsh" given the accompanying circumstances and the extent to which the defendant had already suffered.  One can think of additional reasons that, even in combination with the ordinarily insufficient "clear and convincing" evidence of lack of flight risk or dangerousness, would qualify as "exceptional."  Fatal illness of the defendant or the defendant's spouse or child might be one example.  Significant changes in life circumstances leaving the defendant without the opportunity to commit the same crimes in the future might be another.  Exceptional reasons might also exist when the defendant's culpability is significantly less than that of the typical offender contemplated by Congress in creating its categories of dangerous offenders, or when the defendant's immediate incarceration would cause him undue or unusual hardship.  The exception may also apply when it is fairly clear that we will be compelled to reverse the defendant's conviction.  There appear to be a number of possible reasons that might under appropriate circumstances qualify as exceptional.  The general principle, however, seems to be that exceptional reasons exist in unusual cases where application of the statute would be "unduly harsh."

*Koon*, 6 F.3d at 567-68.

After considering the legislative history and the relevant case law, this Court concludes that Congress clearly intended to limit the district court's discretion in allowing consideration of release of certain classes of offenders under the exceptional reasons provision of 18 U.S.C. § 3145(c). Further, while the determination of whether "exceptional reasons" have been shown is a fact-intensive inquiry, this inquiry should be limited to those instances in which a defendant is incapacitated (physically or mentally) such that he or she is unable to engage in further similar

criminal conduct.[10]  Additionally, such a defendant must be capable of raising a legitimate issue on

appeal.[11]  And as the statute plainly states, a defendant must meet a higher standard of proof by

*clearly showing* that exceptional reasons justify release.

Under this analysis, the "exceptional reasons" provision would not include those instances

where the defendant seeks release solely to continue his or her cooperation with the United States

to gain the benefit of a sentence reduction under §5K1.1 of the United States Sentencing Guidelines

or Rule 35 of the Federal Rules of Criminal Procedure.  *See United States v. Douglas*, 824 F. Supp.

98, 99 (N.D. Tex.1993) (finding no exceptional reasons based upon "an agreement to cooperate with

the government and testify at the trial" which subjected the defendant "to potential retaliation from

his co-defendants").  Under such circumstances, the Defendant is generally capable of engaging in

similar criminal conduct.  And while at least one court has suggested that cooperation with the

government *may mitigate* in favor of release pending sentencing, its decision is at odds with the

analysis set forth above and the factors that this Court believes must be shown to justify release

---

[10]      In *Price*, the defendant asserted exceptional reasons for release arising from a medical condition, placenta previa (low placenta), that would likely require a caesarian delivery before she was sentenced.  She contended that, unless released, her health and the health of her unborn child were threatened.  The court found that this condition was sufficient to meet the exceptional reasons provision of § 3145.  *See Price*, 2008 WL 215811, at *2.

[11]      Recently, this Court found that all of these factors were present in directing the release of a defendant pending appeal.  *United States v. Williams*, Pikeville Criminal No. 07-19-DCR (E.D. Ky. June 2, 2008).  In *Williams*, the defendant was charged with violating certain health and safety standards for underground coal mines in violation of the Mine Safety Act.  The defendant was convicted following a jury trial and sentenced to a term of imprisonment of 18 months.  As a condition of his supervised release, Williams was prohibited from future employment in the underground mining industry.  After his conviction, the Defendant was diagnosed with a life-threatening illness which required immediate, aggressive treatment.  Subsequently, the Defendant requested release from custody, claiming that his medical condition was not being properly treated at the Bureau of Prison's medical facility to which he was assigned.  After reviewing the record, the Court found that exceptional reasons existed for release due to (i) the Defendant's assertion that he was not receiving adequate treatment, (ii) the Court ability to restrict William's future mining activities, and (iii) nonfrivolous issues being raised on appeal regarding his sentence.

under 18 U.S.C. § 3145(c) (*i.e.*, raising a legitimate issue on appeal and establishing that, if released, the defendant will not be able to engage in the same type of conduct that led to his or her conviction). *See, e.g.*, *United States v. Carretero*, No. 98CR418TJM, 1999 WL 1034508 (N.D.N.Y. Nov. 4, 1999) (denying release but stating that it would not "foreclose the possibility that active cooperation which benefits the government, the defendant, and the societal goal of drug eradication may constitute an exceptional circumstance in an appropriate case"). Release of such a hypothetical defendant would not fall within the narrow class contemplated by Congress when the "exceptional reasons" provisions was adopted.[12] Further, such relief does not provide protection to the public and would nullify the restrictive provisions contained in 18 U.S.C. § 3143.

### D.   Miller's Claim of Exceptional Reasons is Insufficient to Support His Release.

In the present case, and against the statutory background outlined above, Miller asserts that he needs to be released to assist his wife and young child in finding a new home. However, based on the relevant case law, the restrictive language of the statute, and legislative history, the Court cannot conclude that this alleged family hardship constitutes the "exceptional reasons" contemplated by Congress to justify release pending sentencing. While the Court recognizes that Miller's incarceration will place a significant burden on his wife and child, this type of hardship is not unusual inasmuch as most defendants convicted of drug trafficking crimes present similar hardships. As the Sixth Circuit has indicated, a family hardship alone does not constitute "exceptional reasons" to justify release under 18 U.S.C. § 3145. *See Cook*, 42 F.App'x at 804.

---

[12]   The Court also notes that a broad definition of "exceptional reasons" that would allow release based on the parties' agreement would not advance Congressional intent. Instead, it would improperly shift the critical determination assigned to the judicial officer and constitute an impermissible abrogation of duties assigned to Article III courts.

### III.     CONCLUSION

Miller has not alleged nor offered proof of circumstances that would warrant release under § 3145(c).  Specifically, he has neither alleged nor has he clearly shown that, if released, he will be unable to repeat similar criminal behavior due some physical or mental limitation.  Likewise, he has not demonstrated that he has or will raise a substantial question of law on appeal that is likely to affect his conviction or term of imprisonment.  Accordingly, the Defendant has not demonstrated exceptional reasons to justify his release under 18 U.S.C. § 3145(c)

For the reasons outlined above, it is hereby

**ORDERED** that the Defendant's motion for release pending sentencing [Record No. 48] is **DENIED**.

This 30th day of July, 2008.



Signed By:

*Danny C. Reeves*

United States District Judge